# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

FERNANDO ALLEN SANCHEZ,

Plaintiff,

v.

COUNTY OF SAN DIEGO, by and through its Health & Human Services Agency (HHSA); et al.,

Defendants.

Case No.:  25-cv-02987-DMS-KSC

**ORDER:**

**(1) SCREENING THIRD AMENDED COMPLAINT SUA SPONTE;**

**(2) DIRECTING U.S. MARSHAL SERVICE TO EFFECT SERVICE OF THIRD AMENDED COMPLAINT UPON DEFENDANTS;**

**(3) GRANTING APPLICATION TO ELECTRONICALLY FILE CASE DOCUMENTS; and**

**(4) SETTING BRIEFING SCHEDULE FOR MOTION FOR PRELIMINARY INJUNCTION**

**[ECF No. 18]**

/ / /

/ / /

1

25-cv-02987-DMS-KSC

Pending before the Court is Pro Se Plaintiff Fernando Allen Sanchez's Third Amended Complaint ("TAC"), (Third Amended Compl. ("TAC"), ECF No. 18, at 4–20), and motion for leave to electronically file case documents, (E-File Mot., ECF No. 18, at 1).[1] This Court previously granted Plaintiff's motion to proceed in forma pauperis ("IFP"), (ECF No. 5, at 2), but dismissed the previous complaints for failure to state a claim. (*See* ECF Nos. 5, 8, 16.) Because Plaintiff is proceeding IFP, the Court must also screen the TAC. For the following reasons, the Court finds the TAC survives the sua sponte screening required by 28 U.S.C. § 1915(e)(2), and directs the U.S. Marshal to effect service of the TAC upon the Defendants. The Court also grants Plaintiff's motion to electronically file.[2]

## I.    SCREENING OF TAC SUA SPONTE

### A. Legal Standard

Under 28 U.S.C. § 1915(e)(2), an IFP complaint must be screened by the Court. 28 U.S.C. § 1915(e)(2). The Court must sua sponte dismiss an IFP complaint that is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. *Id.*; *see also Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (noting that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

The standard for determining whether an IFP complaint fails to state a claim under § 1915(e)(2) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

---

[1] The TAC and motion to electronically file are both docketed under ECF No. 18. As such, citations to page numbers refer to the page number of ECF No. 18, not the filings.

[2] Plaintiff also filed a motion for preliminary injunction. (ECF No. 18, at 2–3.) Once the Defendants have been served with the TAC, the Court will set a briefing schedule for the motion for preliminary injunction.

25-cv-02987-DMS-KSC

cause of action, supported by mere conclusory statements, do not suffice." *Id.* While the Court has an obligation to construe pro se pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), it may not "supply essential elements of [claims] that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Factual Background

This suit arises from Defendants, the County of San Diego ("County") and County employee Vanessa Huerta, allegedly depriving Plaintiff of his CalFresh benefits (i.e., California's food stamp program, Cal. Welf. & Inst. Code § 18900.2) in violation of due process.[3] The Court accepts the following allegations as true for purposes of screening the TAC. Plaintiff received CalFresh benefits for approximately two years prior to September 2025. (TAC ¶ 8.) His benefits were set to expire in September 2025. (*See id.* ¶ 15.) Plaintiff had zero income and remained fully eligible when he attempted to recertify his CalFresh benefits beginning in August 2025. (*Id.* ¶¶ 9–10.) Plaintiff's benefits were terminated September 27, 2025, (*id.* ¶ 15), and have not yet been restored. (*Id.* ¶ 16.)

In August 2025, the Health and Human Services Agency ("HHSA") mailed Plaintiff a notice scheduling a telephonic interview for August 22, 2025. (*Id.* ¶¶ 10, 17.) However, Plaintiff received the notice after the scheduled date. (*Id.* ¶ 17.) Plaintiff also did not receive a call from the HHSA on August 22, 2025. (*Id.* ¶ 11.) Plaintiff was similarly notified by mail that his interview was rescheduled for November 18, 2025, (*id.* ¶ 18), and December 8, 2025. (*Id.* ¶ 19.) However, again, "Plaintiff received interview notice only after the scheduled appointment had already passed." (*Id.* ¶ 20.) His interview was

---

[3] Plaintiff's previous complaints named Administrative Law Judge Richard Navarro as a defendant. However, the TAC does not list Judge Navarro in either the caption or under the "Parties" section. (TAC at 4–5.) Plaintiff's TAC supersedes the previous complaints, and because the TAC does not state a claim against Judge Navarro, he is hereby **DISMISSED**. *See, e.g.*, *Hendrix v. Neighbors*, No. 13-cv-01527-JAD-CWH, 2015 WL 4548722, at *2 (D. Nev. July 27, 2015).

25-cv-02987-DMS-KSC

rescheduled eight times, but Plaintiff did not receive calls from HHSA on those rescheduled dates either. (*Id.*)

In September 2025, after the third rescheduled interview date passed with no phone call, Plaintiff disabled all Verizon spam and call filters "in an effort to eliminate any user-side variable." (*Id.* ¶ 12.) While Plaintiff began receiving junk and spam calls, none of HHSA's calls came through. (*Id.*) HHSA calls originate from "866 or 855 numbers that register as unknown or potential spam on recipient devices, and in some instances from blocked numbers that display no identifying information whatsoever." (*Id.* ¶ 13.) HHSA also does not provide "advanced notice of its outbound numbers and employs no comparable delivery assurance mechanism." (*Id.*) Plaintiff alleges that these calls did not reach Plaintiff "due to a system-level communication failure within the County's infrastructure," (*id.* ¶ 21), and this "IT-level communication failure predated the August 2025 recertification process." (*Id.*)

An unnamed supervisor from the County's CalFresh ACCESS line told Plaintiff that outbound calls from County systems "frequently fail to reach recipients and that obtaining a landline might be the only reliable remedy." (*Id.* ¶ 27.) When Plaintiff told the supervisor that he lacked the financial ability to immediately obtain a landline, the supervisor responded, "do what you need to do to protect your food stamps." (*Id.*) Thus, Plaintiff alleges that "the communication delivery failure was known at a supervisory level within HHSA . . . and was treated as a known, recurring institutional problem." (*Id.*) Additionally, "Plaintiff alleges, on information and belief, that the IT-level communication lockout was not a product of inadvertence, given the County's failure to investigate or correct the failure over more than five months." (*Id.* ¶ 12.) "No County entity . . . has addressed the nature or origin of this lockout to date." (*Id.*)

At some point, Plaintiff obtained a landline and new cellular telephone number. (*Id.* ¶ 14.) However, "[n]either . . . restored receipt of County outbound calls." (*Id.*) Plaintiff received only two calls from the County, placed at approximately 5:13 a.m. and 5:16 a.m. on a single occasion (date not specified). (*Id.* ¶ 25.) Because Plaintiff was asleep, he did

25-cv-02987-DMS-KSC

not answer. (*Id.*)  The calls came from out-of-area numbers. (*Id.*)  When Plaintiff tried to return the calls, the numbers routed to "County lines." (*Id.*)

Plaintiff requested a state administrative hearing for the termination of his CalFresh benefits. (*Id.* ¶ 28.)  Plaintiff's request was denied on September 4, 2025. (*Id.* ¶ 29.)  Then, on September 30, 2025, a telephonic hearing was conducted before Judge Navarro. (*Id.* ¶ 30.)  The hearing was recorded. (*Id.*)  Huerta appeared on behalf of HHSA. (*Id.* ¶ 31.)  Huerta presented internal call logs to Judge Navarro as proof that outreach to Plaintiff had been completed.  (*Id.*)  These logged calls corresponded with the nine scheduled and rescheduled interview dates.  (*Id.*)  Huerta did not produce carrier-level delivery confirmation, a record of successful connection, or verification that the nine calls reached Plaintiff's device. (*Id.* ¶ 32.)  Huerta also did not acknowledge the two early-morning calls that Plaintiff received.  (*Id.*)  Huerta admitted on the record that the County experienced problems with call filters across all major carriers, including Verizon and that HHSA calls originate from blocked numbers that recipients cannot whitelist. (*Id.* ¶ 33.)  Plaintiff stated at the hearing that he did not receive any of the nine phone calls.  (*Id.* ¶ 35.)  He requested that Huerta be required to produce carrier-level delivery verification rather than the internal call logs, but the request was denied.  (*Id.*)  "The hearing was continued following Plaintiff's objection." (*Id.* ¶¶ 34–35.)

A second hearing occurred in October or November 2025. (*Id.* ¶ 36.)  This hearing was not recorded. (*Id.*)  Huerta represented that the County's outreach had been completed and was sufficient.  (*Id.* ¶ 37.)  Huerta also represented that additional outreach had occurred, but did not provide specifics on when these calls were made or what numbers were used. (*Id.* ¶ 38.)  Plaintiff informed Judge Navarro of the two early-morning calls and challenged Huerta's assertion that additional outreach occurred.  (*Id.* ¶ 39.)  Plaintiff's request for proof of successful delivery of the phone calls was denied. (*Id.*)  Judge Navarro stated that he was satisfied with Huerta's representations that outreach occurred. (*Id.*)

A third hearing occurred in November or December 2025. (*Id.* ¶ 40.)  This hearing was also not recorded. (*Id.*)  Plaintiff re-stated that he did not receive any of HHSA's nine

25-cv-02987-DMS-KSC

calls. (*Id.* ¶¶ 41–42.) Judge Navarro stated that he would issue a written decision and denied Plaintiff's request for an oral ruling. (*Id.* ¶ 43.) Judge Navarro's written denial was issued 88 days after the third hearing. (*Id.* ¶ 44.)

During the relevant time period, Plaintiff called the ACCESS line approximately 60 times. (*Id.* ¶ 51.) On many of these calls, once Plaintiff completed the identity verification and the call transferred to a caseworker, the call disconnected. (*Id.* ¶ 52.) This made is "structurally impossible" for Plaintiff to communicate with County personnel. (*Id.* ¶ 14.) During one ACCESS call that made it through to a representative, Plaintiff provided the representative with his new landline and cellphone number. (*Id.*) The representative confirmed the numbers had been received, but those numbers were not saved in Plaintiff's case. (*Id.*) Thus, throughout the relevant period, the County was calling outdated contact numbers, yet using those calls as proof that outreach has been completed. (*Id.*)

On January 15, 2026, Plaintiff contacted ACCESS and reached HHSA Supervisor Luz Moreno. (*Id.* ¶ 46.) The call lasted two hours. (*Id.*) During the call, Supervisor Moreno completed Plaintiff's intake. (*Id.*) Moreno also attempted to call Plaintiff through the County system while Plaintiff was on the line, but was unable to reach Plaintiff through the system. (*Id.* ¶ 47.) Moreno had to contact Plaintiff using a non-County telephone line in order to complete the intake call. (*Id.* ¶ 48.) Moreno informed Plaintiff that his benefits would be restored within three days; however the benefits were not restored. (*Id.* ¶ 49.) Plaintiff later learned that his application had been denied because of "incomplete intake," despite his call with Moreno. (*Id.*) During another ACCESS call, on or about February 17, 2026, Plaintiff spent approximately one hour on the phone with a representative. (*Id.* ¶ 53.) The call did not result in the restoration of Plaintiff's benefits or any corrective action for the above-described issues. (*Id.*)

Additionally, Plaintiff went in-person to the HHSA's offices in San Diego and Chula Vista, California. (*Id.* ¶¶ 54–55.) Both times, HHSA employees told Plaintiff that a caseworker needed to call him to resolve his case. (*Id.* ¶¶ 54–55.) Plaintiff informed staff that outbound calls from the County were not reaching him, but he was not given an in-

25-cv-02987-DMS-KSC

person alternative to process his application. (*Id.* ¶¶ 54–55.) Plaintiff also submitted multiple applications through the BenefitsCal portal. (*Id.* ¶ 59.) Those applications were denied, lost, or not processed. (*Id.*) Plaintiff also mailed in an application, but received no response. (*Id.* ¶ 60.) Plaintiff submitted four total applications since September 27, 2025, but no benefits have been restored. (*Id.* ¶ 61.)

After five months of attempting to recertify his CalFresh benefits, Plaintiff was told during a County call to contact 211. (*Id.* ¶ 56.) Plaintiff contacted 211, but was informed that they could "only forward information to the County and had no authority to notify HHSA of a system-level communication failure or compel corrective action." (*Id.* ¶ 57.) "The 211 referral resulted in no restoration of benefits." (*Id.*) "Plaintiff also contacted HHSA's civil rights division and elected officials regarding the communication failure." (*Id.* ¶ 58.) "No corrective action resulted from any of these efforts." (*Id.*)

On or about February 10, 2026, Plaintiff requested an additional state hearing. (*Id.* ¶ 62.) He was told scheduling would take approximately one month or longer. (*Id.*) As of the date of filing, no hearing had occurred. (*Id.*)

The TAC asserts two 42 U.S.C. § 1983 claims for violations of his Fourteenth Amendment right to procedural due process: one against the County, under a *Monell* theory of liability and the other against Huerta in her individual capacity. (*Id.* at 12, 15.) Plaintiff requests damages, declaratory relief, and injunctive relief. (*Id.* at 18–19.)

**C. Discussion**

1. Procedural Due Process Claims

The Fourteenth Amendment's Due Process Clause protects individuals against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). "[P]rocedural due process protections apply to the termination of welfare benefits for those statutorily entitled to them." *Johnson v. Cnty. of Los Angeles*, No. CV 14-4407 JLS (KK), 2015 WL 4881349,

25-cv-02987-DMS-KSC

at *4 (C.D. Cal. Apr. 21, 2015), *report and recommendation adopted,* No. CV 14-4407-JLS (KK), 2015 WL 4886010 (C.D. Cal. Aug. 14, 2015), *aff'd* (June 9, 2016), *judgment entered,* No. CV 14-4407-JLS (KK), 2015 WL 4886022 (C.D. Cal. Aug. 14, 2015) (citing *Goldberg v. Kelly,* 397 U.S. 254, 260 (1970)).

If a protected interest has been violated, the Court then determines what process is due by considering three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  "[W]ith respect to termination of welfare benefits, . . . due process requires a pre-termination hearing "at a meaningful time and in a meaningful manner." *Rodriguez v. Vega*, No. 2:15-CV-0158 GGH PS, 2015 WL 6872817, at *8 (E.D. Cal. Nov. 9, 2015) (citing *Goldberg,* 397 U.S. at 267).

### 2. Individual Liability

To state a claim for relief under § 1983, Plaintiff must sufficiently allege "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  "A person deprives another of a constitutional right, within the meaning of section 1983, if [s]he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [s]he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson*, 2015 WL 4881349, at *4 (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

First, the Court finds the TAC sufficiently alleges a violation of Plaintiff's procedural due process rights.  He alleges that he received CalFresh benefits for approximately two years and that he had zero income and remained fully eligible when he attempted to recertify his benefits in August 2025. (TAC ¶¶ 8–10.) Plaintiff then alleges

25-cv-02987-DMS-KSC

that, despite being eligible, he has not received CalFresh benefits. (*Id.* ¶ 16.) Further, Plaintiff alleges a plethora of frustrations and complications that led to the erroneous deprivation of his CalFresh benefits: mailing notices of interviews too late, using a communications system that does not reach CalFresh applicants, and employing an ACCESS line that drops calls prior to intake being completed. (*Id.* ¶¶ 10, 11, 17–20, 27.) Plaintiff also alleges that the denial of Plaintiff's benefits was based on false and insufficient evidence—namely that the County claimed to have completed its outreach to Plaintiff, despite him never receiving HHSA's calls. (*See id.* ¶¶ 29–42.) Plaintiff then alleges that the County was capable of implementing a low-cost alternative that other entities, such as 211, use. (TAC ¶ 95(c).)

Further, the Court finds that the TAC sufficiently alleges Huerta, while acting under the color of law, proximately caused the deprivation. Plaintiff alleges that Huerta appeared at his administrative hearings on behalf of HHSA, which is a government entity. (*See id.* ¶ 31.) Plaintiff alleges that Huerta presented the internal call logs at the administrative hearing and argued that outreach been completed. (*Id.* ¶¶ 31–32, 37, 39.) Huerta's arguments, at least in part, formed the basis of Judge Navarro's decision to deny Plaintiff of the CalFresh benefits. (*Id.* ¶¶ 39, 44.)

Thus, accepting the factual allegations as true and construing the pleading in the light most favorable to Plaintiff—as this Court is required to do—it is plausible that Huerta's actions were under the color of state law and proximately caused the deprivation of Plaintiff's procedural due process rights. Thus, the Court finds the TAC survives the low threshold for proceeding past the sua sponte screening required by 28 U.S.C. § 1915(e)(2).

### 3. *Monell* Liability

A municipality may be liable for the deprivations of constitutional rights deriving from the execution of a municipality's policies or customs. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a *Monell* claim, a plaintiff must sufficiently allege that "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's]

25-cv-02987-DMS-KSC

constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). The plaintiff must show a "direct causal link" between the policy and the constitutional deprivation. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc).

Generally, "[i]solated or sporadic incidents" are generally insufficient to establish municipal liability, *see Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); however, "[u]nder certain circumstances, a single act, when carried out by a municipal 'policymaker,' may also give rise to *Monell* liability, even in the absence of a municipal policy or custom." *Johnson*, 2015 WL 4881349, at *3 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986)). "Municipal liability may also arise when an unwritten custom becomes 'so "persistent and widespread" that it constitutes a "permanent and well settled [municipal] policy."'" *Id.* (citing *Trevino*, 99 F.3d at 918 (9th Cir. 1996)).

As stated above, the TAC sufficiently alleges that Plaintiff was deprived of a constitutional right. (*See supra* Section I.C.2.) Next, the TAC alleges several policies: (1) "a practice of treating internal call initiation logs as proof of completed outreach, without requiring carrier-level delivery confirmation or verification of successful connection," (TAC ¶ 66); (2) the lack of "effective protocol for identifying, escalating, or correcting system-level communication failures once reported by a recipient," (*id.* ¶ 70); (3) "recertification and restoration processes [that] depend exclusively on telephone contact," with "no alternative in-person or written mechanism," (*id.* ¶ 73); (4) "mailing practices result[ing] in interview notices arriving after scheduled appointment dates on three separate occasions," (*id.* ¶ 74); and (5) a failure "to update Plaintiff's case file with new contact numbers provided by Plaintiff," (*id.* ¶ 76). There are few instances of many of these "policies" occurring, even when construing the allegations liberally. For example, there are at most two instances of Huerta using the County's internal call logs as proof of completed outreach, (*id.* ¶¶ 31–32, 37, 39), three instances of the delayed mailing of interview notices (*id.* ¶¶ 10, 17–20), and one instance of failing to update Plaintiff's case file with new contact numbers, (*id.* ¶ 14). Thus, the factual allegations are too isolated and

25-cv-02987-DMS-KSC

sporadic to find these instances rise to a policy or custom. Additionally, Plaintiff did not allege that these actions were carried out by a "policymaker," such that one instance is sufficient to constitute a policy or custom. However, Plaintiff does allege nine instances of the County's telephone communications failing to reach his device. (*Id.* ¶¶ 11, 20.) He also alleges that Huerta and Moreno were aware that this is a continuing issue. (*Id.* ¶ 33, 47.) Thus, construing the TAC in the light most favorable to Plaintiff, the TAC sufficiently alleges that the County's calling system is so "persistent and widespread" that it constitutes a permanent and well settled municipal policy.

Additionally, the TAC sufficiently alleges deliberate indifference, because Plaintiff states that he personally notified several County and HHSA employees that he did not receive HHSA's calls, and that Huerta and Moreno were on notice of this issue. (*See id.* ¶¶ 33, 47.) In fact, Plaintiff alleges that Huerta admitted that HHSA has a reoccurring issue with call filters across all major carriers. (*Id.* ¶ 33.) Further, an ACCESS line supervisor allegedly told Plaintiff to purchase a landline and to "do what [he] need[ed] to do" to protect his CalFresh benefits. (*Id.* ¶ 27.)

Lastly, the TAC sufficiently alleges that this policy or custom was the moving force behind the constitutional violation. Plaintiff alleges that attempting to apply for benefits via other methods (e.g., online, mail, in-person) did not restore his benefits, and that he was told he had to speak with a County representative via the telephone to restore his benefits. (*Id.* ¶¶ 54–55, 59–61.) Thus, when construing the pleading most favorable to Plaintiff and considering the low standard threshold at this early stage in litigation, the Court finds that Plaintiff sufficiently alleges a *Monell* claim on this theory.

**D. Service by U.S. Marshal**

Because the TAC survives the sua sponte screening standard under § 1915(e)(2), the Court orders the U.S. Marshal to effect service upon Defendants the County and Huerta on Plaintiff's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court

25-cv-02987-DMS-KSC

may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

## II.   APPLICATION TO ELECTRONICALLY FILE

Generally, "[e]xcept as prescribed by local rule, order, or other procedure, the Court has designated all cases to be assigned to the Electronic Filing System." S.D. Cal. Civ. R. 5.4(a). However, "[a] pro se must seek leave to electronically file documents in each case filed." Off. of the Clerk, U.S. Dist. Ct., S. Dist. Of Cal., *Electronic Case Filing Administrative Policies and Procedures Manual* § 2(b) (2025). "A pro se party seeking leave to electronically file documents must file a motion and demonstrate the means to do so properly by stating their equipment and software capabilities in addition to agreeing to follow all rules and policies in the CM/ECF Administrative Policies and Procedures Manual." *Id.* The manual refers to the Court's official web site for CM/ECF technical specifications, *id.* at § 1(i), which include a "computer running on Windows 7 or higher, MacOS X or higher, or Linux"; "[s]oftware to convert documents from a word processor format to PDF, such as Adobe Acrobat"; a "[d]ocument scanner"; "[i]nternet access capable of downloading and uploading files sizes up to 35 MB"; a "compatible browser, such as Firefox 15 or higher, Microsoft Edge, or Safari 5.1 or higher"; and "[a]n email account to receive notifications from the Court." *Representing Yourself in Federal Court (Pro Se)*, U.S. Dist. Ct., S. Dist. of Cal. (last visited Nov. 6, 2025, at 14:37 PT), https://www.casd.uscourts.gov/ProSe/Prose-FilingInfo.aspx.

Plaintiff represents that he has the "technical ability to generate and upload properly formatted PDF documents." (E-File Mot.) He also has an Apple computer equipped with the software needed to "produce court-compliant filings." (*Id.*) Plaintiff has and email account to receive notifications from the Court. (*See* ECF No. 4.) For these reasons, the Court **GRANTS** Plaintiff's motion to electronically file Court documents.

## III.   CONCLUSION

Based on the foregoing, the Court finds the TAC survives the sua sponte screening standard under § 1915(e)(2); however, Defendant Judge Navarro is **DISMISSED** from this

25-cv-02987-DMS-KSC

action.   The Court also **GRANTS** Plaintiff's motion to electronically file documents. Lastly, the Court:

(1) **DIRECTS** the Clerk to issue a summons as to Plaintiff's TAC, (ECF No. 18), upon Defendants the County and Huerta and to forward it to Plaintiff along with a blank U.S. Marshal Form 285.  In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a copy of the Court's November 7, 2015 Order granting Plaintiff's motion to proceed IFP, (ECF No. 5), two certified copies of his TAC, (ECF No. 18), and the summons so that he may serve Defendants via the U.S. Marshal.  Upon receipt of these materials, which will altogether comprise his "IFP Package," Plaintiff must complete the Form 285 as completely and accurately as possible, include an address where Defendants may be served, *see* S.D. Cal. Civ R. 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

(2) **ORDERS** the U.S. Marshal to serve a copy of Plaintiff's TAC and summons upon Defendants as directed by Plaintiff on the U.S. Marshal Form 285 provided to him. All costs of that service will be advanced by the United States.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

(3) **ORDERS** Defendants, once served, to reply to Plaintiff's TAC within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a).

(4) **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Federal Rule of Civil Procedure 5(b).  Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been served on Defendants or their counsel, and the date of that service.  S.D. Cal. Civ. R. 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED.**

25-cv-02987-DMS-KSC

Dated: March 13, 2026

Hon. Dana M. Sabraw
United States District Judge

14